1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATALIE JENSEN,

           Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

           Defendant.

No.  2:13-cv-01822-AC

ORDER

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") as a child under Title XVI of the Social Security Act.  Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment are pending.  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment in part and deny the Commissioner's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

       Plaintiff's mother filed her application for SSI on her behalf on March 30, 2006. Administrative Record ("AR") 11.  Plaintiff's application was denied initially on September 14, 2006, and again upon reconsideration on June 8, 2007.  Id.  Following a hearing, plaintiff's request for benefits was denied on September 18, 2008.  Id.  Plaintiff requested review of the

1

decision by the Appeals Council, which remanded her claim on November 4, 2010.  Id.  On August 10, 2011, a hearing was held before administrative law judge ("ALJ") Stanley R. Hogg. AR 11, 33.  Plaintiff appeared with her attorney at the hearing, where she and her mother, Bonnie Sue Jensen, testified.  AR 11.  In a decision dated October 14, 2011, the ALJ found plaintiff not disabled.  AR 33.

The ALJ made the following findings (citations to 20 C.F.R. and Exhibits omitted):

1.   The claimant was born on September 24, 1992, and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on March 30, 2006, the date the application was filed.  The claimant attained age 18 on September 23, 2010.

2.   The claimant has not engaged in substantial gainful activity since the date the application was filed.

3.   Before attaining age 18, the claimant had the following severe impairments: borderline intellectual functioning (BIF) with IQ of 75 and attention deficit hyperactive disorder (ADHD).

4.  Before attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B.

5.  Before attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the listings.

6.   Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to attaining age 18.

7.   The claimant has not developed any new impairment or impairments since attaining age 18 in September 2010.

8.  Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments.

9.  Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment.

10.  After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; limited to simple, repetitive tasks consistent with a limitation to unskilled work.

2

11.  The claimant has no past relevant work.

12.  The claimant is currently a "younger individual age 18–44."

13.  The claimant has at least a high school education and is able to communicate in English.

14.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

15.  Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant has been able to perform.

16.  The claimant has not been under a disability, as defined in the Social Security Act, since September 23, 2010, the day the claimant attained age 18, through the date of this decision.

AR 11–33 (citations to the Code of Federal Regulations omitted).

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on July 23, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1–4.

FACTUAL BACKGROUND

Born on September 24, 1992, plaintiff was 13 years old on the date her SSI application was submitted and 18 years old at the time of the most recent administrative hearing.  AR 11, 16. Plaintiff has never engaged in substantial gainful activity.  AR 16.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

3

1      A reviewing court must consider the record as a whole, weighing both the evidence that

2   supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  The

3   court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting

4   evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial

5   evidence supports the administrative findings, or if there is conflicting evidence supporting a

6   finding of either disability or non-disability, the finding of the ALJ is conclusive, Sprague v.

7   Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987), and may be set aside only if an improper legal

8   standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir.

9   1988).

10      In determining whether or not a child is disabled for purposes of the SSI program, the ALJ

11   should apply the three-step sequential evaluation process established under Title 20 of the Code

12   of Federal Regulations, § 416.924.  This evaluation process was developed after the statutory

13   definition of childhood disability and the standard for determining whether a child is eligible for

14   disability benefits were altered in 1996 by the Personal Responsibility and Work Opportunity

15   Reconciliation Act, Pub.L. No. 104–193, § 211, 110 Stat. 2105 (1996).  See Howard ex rel. Wolff

16   v. Barnhart, 341 F.3d 1006, 1013 (9th Cir. 2003) (citing legislative history indicating that the

17   change in the law was designed so that only needy children with severe disabilities will be

18   eligible for SSI); Jamerson v. Chater, 112 F.3d 1064, 1065, 1067–68 (9th Cir. 1997) (recognizing

19   the more stringent standard for finding a child disabled imposed by the 1996 legislation).

20      A child, defined as "[a]n individual under the age of 18," is disabled for purposes of the

21   SSI program if the child "has a medically determinable physical or mental impairment, which

22   results in marked and severe functional limitations, and which can be expected to result in death

23   or which has lasted or can be expected to last for a continuous period of not less than 12 months."

24   42 U.S.C. § 1382c(a)(3)(C)(i).  The three-step evaluation process requires the ALJ to determine

25   (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the

26   claimant has a medically determinable impairment or combination of impairments that is severe;

27   and (3) whether the claimant's impairment or combination of impairments meets or medically

28   equals the requirements of a listed impairment, or functionally equals the listings.  20 C.F.R. §

4

1   416.924(b)-(d); see also Nesmith ex rel. A.S. v. Astrue, No. CV–07–217–CI, 2008 WL 958206, at

2   *2 (E.D. Wash. Apr. 8, 2008); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1150–

3   51 (C.D. Cal. 2008); Smith v. Massanari, 139 F. Supp. 2d 1128, 1132 (C.D. Cal. 2001).  "The

4   claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66

5   F.3d 179, 182 (9th Cir. 1995).

6         The court will not reverse the Commissioner's decision if it is based on harmless error,

7   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

8   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

9   2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

10  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

11                                       ANALYSIS

12        Plaintiff seeks summary judgment on the grounds that (1) the ALJ committed an error of

13  law in failing to call upon a qualified medical expert to opine on plaintiff's case in accordance

14  with Acquiescence Ruling (AR) 04–1(9); (2) the ALJ failed to comply with POMS DI

15  24515.056(D) in determining whether plaintiff suffers from a listing level impairment; (3) the

16  ALJ failed to adequately consider Listing 112.11—Attention Deficit Hyperactivity Disorder; and

17  (4) the ALJ's decision is not supported by substantial evidence.  The Commissioner, in turn,

18  argues that the ALJ's findings are supported by substantial evidence and are free from legal error.

19  For the reasons discussed below the court finds that the ALJ committed legal error by failing to

20  call a pediatrician or other appropriate specialist to evaluate plaintiff's case as a whole.

21  A.      Medical Expert Testimony

22        Plaintiff argues that the ALJ violated AR 04–1(9) by failing to call a qualified medical

23  expert to review the entire case after the Appeals Council remanded.  ECF No. 15 at 5–7.

24  Plaintiff also argues that the ALJ committed legal error by failing to explain how plaintiff's

25  medical reports were considered and by failing to include evidence of the medical experts'

26  qualifications in the record.  Id.  The Commissioner argues that the ALJ's decision not to have

27  plaintiff's case evaluated by a medical expert on remand was reasonable based on the available

28  medical evidence.  ECF No. 17 at 7–9.  Specifically, the Commissioner contends that there was

1    no reason to call a medical expert because medical records generated since plaintiff's first hearing

2    indicated that plaintiff had been improving academically and socially.  Id. at 8.  The

3    Commissioner does not address plaintiff's arguments that the ALJ violated AR 04–1(9) by failing

4    to explain how medical reports were considered and failing to include evidence of the medical

5    experts' qualifications in the record.  The court finds that the ALJ did not comply with AR 04–

6    1(9) because his decision does not include an evaluation by a qualified medical expert of the case

7    as a whole.

8            1.      Legal Standards

9            The Social Security Administration issued AR 04–1(9) in response to the Ninth Circuit

10    Court of Appeals' decision in Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006 (9th Cir. 2003). [1]

11    AR 04–1(9) (effective Apr. 26, 2004), available at http://www.socialsecurity.gov/OP_Home/

12    rulings/ar/09/AR2004-01-ar-09.html.  In Howard, the Ninth Circuit held that the ALJ committed

13    a legal error by failing to comply with 42 U.S.C. § 1382c(a)(3)(I), which provides as follows:

> In making any determination under [Title XVI] . . . with respect to
> the disability of an individual who has not attained the age of 18
> years . . . , the Commissioner of Social Security shall make
> reasonable efforts to ensure that a qualified pediatrician or other
> individual who specializes in a field of medicine appropriate to the
> disability of the individual (as determined by the Commissioner of
> Social Security) evaluates the case of such individual.

Howard, 341 F.3d at 1014.  The Ninth Circuit "interpret [ed] this to mean that the ALJ is required

to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a

pediatrician or other appropriate specialist, rather than simply constructing his own case

evaluation from the evidence in the record."  341 F.3d at 1014.  The record in Howard included

various reports from doctors and specialists; however, the Ninth Circuit determined that none of

these reports evaluated the case as a whole.  Id.  Accordingly, the court remanded the case for

further development of the record.  Id. at 1015.

---

[1] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  Bray v.
Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them
deference so long as they do not produce "a result inconsistent with the statute and regulations."
Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

1    Pursuant to AR 04–1(9), the Social Security Administration applies the <u>Howard</u> decision

2    only to Title XVI childhood disability cases in which the claimant resided in a state within the

3    Ninth Circuit at the time of the ALJ or Appeals Council decision.  <u>Howard</u>'s interpretation of 42

4    U.S.C. § 1382c(a)(3)(I) is also only applied to the ALJ and Appeals Council levels of the

5    administrative review process.  AR 04–1(9).  In such cases, the ALJ

6
         must make reasonable efforts to ensure that a qualified pediatrician
7        or other individual who specializes in a field of medicine
         appropriate to the disability of the individual (as identified by the
8        ALJ or AAJ) evaluates the case of the individual. To satisfy this
         requirement, the ALJ or AAJ may rely on case evaluation made by
9        a State agency medical or psychological consultant that is already
         in the record, or the ALJ or AAJ may rely on the testimony of a
10       medical expert. When the ALJ relies on the case evaluation made
         by a State agency medical or psychological consultant, the record
11       must include the evidence of the qualifications of the State agency
         medical or psychological consultant. In any case, the ALJ or AAJ
12       must ensure that the decision explains how the State agency
         medical or psychological consultant's evaluation was considered.

13

14   <u>Id.</u>; <u>see also</u> <u>Willmett ex rel. A.P. v. Astrue</u>, No. 2:10-CV-01201 KJN, 2011 WL 3816284, at *3

15   (E.D. Cal. Aug. 25, 2011); <u>Robinson v. Astrue</u>, No. CIV S-08-2296 DAD, 2010 WL 3733993, at

16   *3 (E.D. Cal. Sept. 21, 2010).

17         2.    <u>Medical History</u>

18         Records indicate that plaintiff was diagnosed with attention deficit hyperactivity disorder

19   (ADHD) in the fall of 2004.  AR 372.  Although she was initially prescribed Ritalin, she

20   transitioned to Metadate in February 2005.  AR 268.  On May 5, 2005, psychologist Jeffrey

21   Widmann, Ed.D., performed a psychological evaluation on plaintiff.  AR 368–71.  At the time

22   plaintiff was a 12 year old student in sixth grade.  AR 368.  Testing revealed a full scale IQ of 75

23   indicating an overall ability in the borderline range as well as weak attention.  AR 370–71.  On

24   December 1, 2005, a social worker at Alta California Regional Center, Ed Loveridge, MSW,

25   found plaintiff to be eligible for special education services under a category similar to mental

26   retardation.  AR 409.

27         In a letter dated April 26, 2006, to California's Health and Human Services Agency

28   Jennifer Pearson, MFT, stated that plaintiff had been receiving therapy related to her academic

                                                7

1    difficulties, grieving the loss of a younger brother, disruptive behaviors, impulse control

2    problems, oppositional behaviors, and strained peer relationships.  AR 422.  Ms. Pearson stated

3    plaintiff had been seeing her weekly since August 11, 2004, and would be discharged on June 30,

4    2006.  Id.  Ms. Pearson agreed with plaintiff's diagnosis of ADHD, and concluded that she had

5    met her goals of improved compliance with rules and expectations both at school and in the

6    home, and improved impulse control.  Id.

7            On August 11, 2006, Diamond Kassam, M.D., reviewed plaintiff's history and

8    development, and performed a comprehensive pediatric evaluation.  AR 425–28.  Dr. Kassam

9    diagnosed plaintiff with development delay, ADHD, and cognitive functioning problems, and

10   indicated that plaintiff reported functioning at the fourth grade level although she was in the

11   eighth grade.  AR 427.  Dr. Kassam opined that plaintiff's ADHD was well controlled on

12   medication; however, he cautioned that his findings were not to be considered a final judgment on

13   the subject because he did not have access to formal testing or school reports.  AR 427.  Dr.

14   Kassam also noted that plaintiff took Albuterol and Motrin, and recommended that plaintiff's

15   back be x-rayed as soon as possible as she seemed to have marked scoliosis.  AR 425–28.  A

16   subsequent imaging report signed by Brian D. Fellmeth, M.D., dated September 28, 2006,

17   diagnosed plaintiff with very minimal thoracolumbar scoliosis.  AR 547.

18           On August 28 and September 12, 2006, state agency psychiatrist V. M. Meenakshilvi,

19   M.D., and physician T. P. Nguyen, M.D., reviewed the record and opined in a Childhood

20   Disability Evaluation Form that plaintiff's impairment or combination of impairments did not

21   meet, medically equal, or functionally equal the listings.  AR 429–34.  According to Dr.

22   Meenakshilvi and Dr. Nguyen, plaintiff had less than marked limitations in every domain except

23   moving about and manipulating objects, in which she had no limitations.  AR 431–32.  In an

24   attachment explaining their findings the doctors summarize the records they reviewed in coming

25   to their conclusions.  AR 435–37.  Those records included evaluations from doctors, letters from

26   therapists, and individualized assessment reports from teachers spanning from January 2003 to

27   September 2006.  Id.

28   ////

On November 6, 2006, school psychologist Geoff Smith, Ph.D., issued a Psychological Assessment Report finding plaintiff to qualify for special education under the criteria for emotional disturbance. AR 349–54. Dr. Smith's report pointed to prior cognitive test scores that indicated her ability to be within the borderline range of functioning and that prior assessments of behavioral functioning indicated significant problems with inattention and hyperactivity. AR 354. Dr. Smith also noted that plaintiff had significant levels of emotional and behavioral difficulties, and demonstrated emotional immaturity and instability, a lack of social skills, and a lack of self-efficacy that likely contributed to problems in school. Id.

A teacher questionnaire dated March 14, 2007, provides insight into plaintiff's academic performance during this time. AR 324–31. Ms. Dina Gassaway had been plaintiff's teacher in at least one subject since August 2005. AR 324. At the time that Ms. Gassaway filled the questionnaire out plaintiff was in the 8th grade and being taught in a special education setting. Id. Ms. Gassaway's report states that plaintiff was reading at the 6th grade level, doing math at the 5th grade level, and writing at a 3rd grade level. Id. Ms. Gassaway also indicated that plaintiff had problems in most domains, needed substantial support to be successful, and had an extremely poor sense of social boundaries. AR 325–31. Nevertheless, Ms. Gassaway noted that learning in a special education setting was helping her to be more successful academically and socially. AR 331.

On April 2, 2007, Frank Weber, Ph.D., performed a psychological consultative evaluation. AR 478. Dr. Weber found that according to the Weschsler Intelligence Scale for Children-IV (WISC-IV) plaintiff was functioning in the extremely low to low average range with a full scale IQ of 67. Id. Based on Dr. Weber's evaluation he found plaintiff qualified for a diagnosis of mild mental retardation, however he noted that plaintiff's medication seemed to be controlling her ADHD because she did not seem to have problems with attention or concentration. AR 479. Finally, Dr. Weber rated Plaintiff's Global Assessment Functioning Scale (GAF) score at 55. AR 480. On May 16, 2007, Lydia Mallare, M.D., reviewed the record on reconsideration and opined in a Childhood Disability Evaluation Form that plaintiff suffered from ADHD and mild retardation. AR 481–82. Dr. Mallare also opined, however, that these impairments did not meet,

1  medically equal, or functionally equal the listings because she had a marked limitation in only

2  one domain, acquiring and using information.  AR 481–84.  An attachment to Dr. Mallare's

3  report details the records she used in making her determination.  AR 486.  These records include

4  reports from the school district, the school itself, therapists, and physicians.  Id.

5        A Psychiatric Assessment dated June 12, 2007, by Paul Copeland, D.O., at the White

6  House Counseling Center diagnosed plaintiff with ADHD, sibling relational problems, and

7  multiple learning delays with a GAF score of 54.  AR 489.  Dr. Copeland noted that plaintiff was

8  pleasant, interacted well, and had cognitive defects but was socially reciprocal.  Id.  She seemed

9  to understand the problems she was facing and was clear in talking about her tendency to have

10  tantrums.  Id.  Plaintiff's insight and judgment were noted as being fair.  Id.

11        In late November and early December 2007, the San Juan Unified School District's

12  Special Education Department generated reports from plaintiff's teachers on her academic and

13  behavioral progress.  AR at 490–98.  In those records plaintiff's teachers commented that plaintiff

14  was easily distracted, but responded well to redirection, however, she often acted inappropriately

15  in class.  AR at 490.  Those records also list the accommodations plaintiff received, including

16  breaks with subtests, spellchecker and grammar checker, and the ability to use the calculator.  AR

17  at 492.  The reports indicated that plaintiff continued to be eligible for special education services

18  based on an emotional disturbance, and in fact required a modification in her special needs

19  program in the way of smaller testing environments and extended time on assignments as needed.

20  AR at 495–97.

21        Special Education Department Assessments from 2008 indicate that plaintiff had

22  problems speaking out of turn, was impulsive, and tended to finish her class work without much

23  effort.  AR 609.  Although multiple reports indicate that she was capable of getting high grades,

24  they also note plaintiff had problems socializing and acting appropriately, especially in large

25  groups.  AR 608, 614.  Special Education Department assessments from December 2009 state that

26  plaintiff had problems understanding basic algebraic concepts, and comprehending what she was

27  reading.  AR 587.  Another teacher reported that plaintiff was "overcoming her social struggles,"

28  worked on appropriate tone daily, and was gradually "becoming less defensive."  AR 595.

1   November 2010 reports from the special education department include an assessment from one

2   teacher stating she was doing a great job, along with observations from others that she was often

3   off task with her socializing and had trouble understanding abstract concepts.  AR 577, 578.

4   Reports also indicate that she was friendly and showed improvement, but still needed to take

5   more responsibility for her education and work on her social skills.  AR 579, 580.

6        Alta California Regional Center records for September 2010 indicate that at the age of 19

7   plaintiff continued to be eligible for the center's services based on her diagnosis of borderline

8   mental retardation.  AR 710.  The report indicates that plaintiff required specialization and

9   continuous care twenty-four hours a day to ensure her health and safety.  AR 678.  Because these

10  duties had become a strain on plaintiff's mother, the report recommends that she utilize a "respite

11  agency" as needed.  Id.  Plaintiff's health was noted as good and her ADHD considered stable

12  with medication.  Id.  Plaintiff was in the 12th grade at the time and had plans to attend American

13  River College after graduation.  Id.

14       An individualized assessment report from December 1, 2010, states that plaintiff's

15  communication development is age appropriate, that she is working towards obtaining a part time

16  job with the help of the school, and that her behavior does not impede the learning of herself or

17  others.  AR 553–54.  The same report states that plaintiff's California Standards Test Scores are

18  far below basic in English/Language Arts, Math, and Science, and below basic in History/Social

19  Studies; and that she struggles with basic concepts in Algebra.  AR 553, 556.  The report also

20  noted that plaintiff was on track to graduate in June 2011.  AR 563.

21       In June 2011, the school generated a summary of plaintiff's academic achievements and

22  development concluding that plaintiff has strong communication and interpersonal skills, and

23  noting that she enjoys helping others and working with small children.  AR 566.  The summary

24  also found that plaintiff improved substantially in her emotional well-being, in part through

25  weekly support meetings with the school psychologist.  Id.  The summary states, however, that

26  plaintiff's academic skills were not at grade level at the time, and that she was struggling with

27  reasoning, comprehension, and writing skills.  Id.  The summary also states that she will need

28  accommodations in any college courses she takes.  Id.

11

1        A letter from Ms. Pearson dated August 12, 2011, includes a summary of services

2    provided to plaintiff by her intern, Cynthia Hunter, MFT.  AR 700.  Ms. Pearson's letter states

3    that during plaintiff's intake on March 16, 2009, she exhibited symptoms of depression, low self-

4    esteem, and difficulty in dealing with loss and problems at school.  Id.  At that time, Ms. Pearson

5    diagnosed plaintiff with adjustment disorder and depressed mood.  Id.  By November 2009,

6    plaintiff was missing fewer school days in accordance with her stated goals.  Id.  When plaintiff

7    was discharged on August 10, 2010, she showed signs of decreased depression and increasing

8    self-esteem, however, her therapist had noted that she would benefit from continued counseling.

9    Id.

10        3.    Analysis

11        The court finds that the ALJ's decision fails to satisfy the requirements of AR 04–1(9).

12    Because the ALJ committed a legal error, the court will grant plaintiff's motion for summary

13    judgment in part and deny the Commissioner's cross-motion for summary judgment.

14        The ALJ's opinion makes no reference to AR 04–1(9), either explicitly or implicitly.

15    However, the record reveals that two separate case reviews by agency physicians took place, one

16    when plaintiff first applied for benefits, AR 429–34, and then another upon reconsideration, AR

17    481–82.  The ALJ's decision describes these reports and the evidence they are based on in detail.

18    AR 19, 20.  The problem is that the most recent report was written on May 16, 2007, AR 481–86,

19    more than a year before the ALJ first denied plaintiff's claim, and more than four years before the

20    ALJ's second denial on remand.  AR 11, 33.  In the interim, the record in plaintiff's case grew.

21    Dr. Mallare could not have considered the more recent evidence in her case evaluation, such as

22    the special education department's reports from the years 2008, 2009, 2010, and 2011, AR 609–

23    14, 587–600, 577–81, 566–67; as well as a status update from plaintiff's therapist, AR 700; and a

24    report from Alta California Regional Center in September 2010, AR 676–79.  These reports do

25    not uniformly support plaintiff's claim of disability, but they do establish that plaintiff continued

26    to have difficulties socializing and comprehending new concepts in an academic setting.  Alta

27    California Regional Center's 2010 report even states that plaintiff requires twenty-four hour

28    support, and suggests that plaintiff's mother utilize "respite care" to achieve a break from her

1  responsibilities.  AR 676–79.  In light of the foregoing evidence that was not considered by the

2  agency physicians' reports, the court finds that the ALJ did not obtain a comprehensive case

3  evaluation in accordance with the Ninth Circuit's decision in Howard.

4      The record also does not include any evidence as to the qualifications of the agency

5  physicians.  Absent an explanation of Dr. Meenakshilvi's, Dr. Nguyen's, and Dr. Mallare's

6  qualifications to evaluate a child diagnosed with ADHD and mild mental retardation the ALJ's

7  decision does not comport with AR 04–1(9).  See Maines v. Comm'r of Soc. Sec., No. 12-CV-

8  04889-JCS, 2014 WL 61041, at *22 (N.D. Cal. Jan. 7, 2014) (finding that the ALJ committed

9  legal error by failing to include evidence of how the agency physicians were qualified to evaluate

10  someone with diabetes).

11      The Commissioner contends that any legal error committed by the ALJ was harmless.

12  ECF No. 17 at 9.  The court finds that although the ALJ's failure to include evidence of the

13  agency physician's qualifications may have been harmless, his failure to obtain a comprehensive

14  case evaluation was not.  The record contains ample evidence of plaintiff's academic, social, and

15  behavioral difficulties.  See, e.g., AR 325–31, 349–54, 608, 614, 609, 678.  Plaintiff has been

16  diagnosed with mild mental retardation, ADHD, scoliosis, and asthma.  AR 525, 534, 481–82,

17  547.  Further, plaintiff has a history of teacher evaluations and special education evaluations

18  finding she has serious problems comprehending and formulating new ideas despite her efforts to

19  focus on the problems in front of her.  See AR 409, 478, 553, 556, 577, 578, 587.  Some of these

20  reports were likely considered by the agency physicians.  See AR 436–37 (listing the evidence

21  considered by Dr. Meenakshilvi and Dr. Nguyen in their report), 486 (listing the evidence

22  considered by Dr. Mallare in her report).  However, many of the reports were generated after the

23  case evaluations took place.  In light of these facts the court does not find it clear that the ALJ's

24  failure to obtain a comprehensive case evaluation was inconsequential to plaintiff's disability

25  determination.

26      In light of the court's finding that the ALJ failed to comply with AR 04–1(9) it declines to

27  reach plaintiff's remaining arguments that (1) the ALJ failed to comply with POMS DI

28  24515.056(D) in determining whether plaintiff suffers from a listing level impairment; (2) the

1   ALJ failed to adequately consider Listing 112.11—Attention Deficit Hyperactivity Disorder; and

2   (3) the ALJ's decision is not supported by substantial evidence.

3   B.      Remand

4          Plaintiff requests that the decision of the ALJ be vacated and that the court award plaintiff

5   benefits or, in the alternative, remand for further consideration.  The decision whether to remand

6   for further proceedings turns upon the likely utility of such proceedings.  Barman v. Apfel, 211

7   F.3d 1172, 1179 (9th Cir. 2000).  In this matter, the court concludes that outstanding issues

8   remain that must be resolved before a determination of disability can be made.  Pursuant to this

9   remand, the ALJ shall call a pediatrician or other medical expert to evaluate plaintiff's case in its

10  entirety and re-evaluate plaintiff's disability determination accordingly.

11                                      CONCLUSION

12         In light of the foregoing, IT IS HEREBY ORDERED that:

13      1.  Plaintiff's motion for summary judgment (ECF No. 15) is granted in part;

14      2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) is denied; and

15      3.  This matter is remanded for further proceedings consistent with this order.

16  DATED: March 18, 2015

17  _____

18  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

14